**Nancy KINDER, Plaintiff,**

v.

**NORTHWESTERN BANK, Defendant.**

**No. 1:10–cv–405.**

United States District Court,
W.D. Michigan,
Southern Division.

Nov. 2, 2011.

Brion Bannon Doyle, Ronald G. DeWaard, Varnum Riddering Schmidt & Howlett LLP, Grand Rapids, MI, for Defendant.

### OPINION AND ORDER GRANTING IN PART AND REFERRING IN PART JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS–ACTION SETTLEMENT

PAUL L. MALONEY, Chief Judge.

This matter comes before the Court on a Joint Motion for Preliminary Approval of Class–Action Settlement. (Joint Mot. ECF No. 41.) The parties seek certification of the class for settlement purposes only and preliminary approval of the settlement.[1] Plaintiff subsequently filed a motion requesting a hearing on the preliminary approval or, in the alternative, for entry of an order preliminarily approving the proposed settlement. (ECF no. 43.) The Court has had the benefit of hearing from the parties on the issue of class certification, and finds no need for a preliminary fairness hearing for the purpose of certification. As explained below, the proposed class is certified for the purpose of settlement. Because the Court sees need for additional materials, a portion of the motion seeking preliminary approval of the terms and conditions of the settlement will be referred to the magistrate judge for a report and recommendation.

Douglas S. Ellmann, Ellmann & Ellmann, PC, Ann Arbor, MI, Geoffrey Grant Bestor, Washington, DC, for Plaintiff.

### BACKGROUND[2]

Nancy Kinder ("Plaintiff") has filed at least twelve lawsuits against banks in Michi-

1. Plaintiff Kinder previously filed a motion for class certification (ECF No. 16), which Defendant Northwestern Bank opposed (ECF No. 17). Defendant Northwestern Bank also filed a motion for summary judgment. Oral argument on Plaintiff's motion for class certification occurred on February 16, 2011. Before any order was issued, the parties filed this joint motion for preliminary approval. Ordinarily, a joint motion for preliminary approval of class-action settlement would be accompanied by a brief outlining the various elements necessary for a class action to be certified by a court. No such brief has been filed here. The parties have submitted a proposed preliminary approval order. The proposed order perfunctorily recites the elements for class certification and asserts, without explana-

tion, that they have been met. Similar stipulations have been approved in other cases, e.g., *Kinder v. ELGA Credit Union*, No. 5:10–cv–11549 (E.D.Mich. June 9, 2011) (preliminary approval order). Federal courts have held that "approval of settlement class actions under Rule 23(e) requires closer judicial scrutiny that approval of settlements reached only after class certification has been litigated through the adversary process." *Manual of Complex Litigation* § 21.612 (4th ed. 2004). Therefore, a more detailed discussion of the elements of Rule 23 is required than that provided in the proposed order.

2. The exhibits referenced in this opinion are attached to Plaintiff's motion for class certification,

gan, in both the Eastern and Western Districts, all single count complaints alleging violations of the Electronic Fund Transfer Act. (Def. Resp. Ex. A–PACER Searches.) Plaintiff has also filed a similar lawsuit in the Eastern District of Kentucky. *See Kinder v. Central Bank and Trust Co.,* No. 11–234–JMH, 2011 WL 5039786 (E.D.Ky. Oct. 24, 2011) (opinion and order denying motion for class certification). When Plaintiff sees an ATM that does not display the fee charges on the outside of the machine, she uses that machine to withdraw money from her account. (Def. Resp. Ex. B–Kinder Dep. 26.) If the screen informs her that she will be charged a fee to withdraw money, she accepts the fee and takes a picture of the machine. (*Id.*) Plaintiff keeps a camera in her car for various reasons, including taking pictures of ATM machines that do not display fee charges. (*Id.* 26–27.)

Individuals who do not maintain an account with Northwestern Bank are charged a fee to withdraw cash from one of Northwestern Bank's ATMs. (Def. Resp. Ex. F–Douglas Zernow Affidavit ¶¶ 3–4.) Prior to commencing any transaction, the screen provides a fee notice informing non-customers, individuals who do not have an account with Northwestern Bank, that they will be charged a fee for any withdrawal. (*Id.* ¶ 7.) The screen prompts the user to affirmatively accept the fee by pressing a particular button if he or she wishes to continue the transaction. (Zernow Affidavit ¶¶ 15–6.)

On July 29, 2009, Plaintiff used one of Defendant's ATM machines in Cadillac, Michigan and another machine in Bay Harbor, Michigan. (Compl. ¶¶ 15(a) and (b)). After Plaintiff used the first Northwestern Bank ATM, she obtained a list of Northwestern Bank's other ATMs through its website. (Kinder Dep. 40.) She then visited the ATMs to see if the machines displayed fee stickers. (*Id.* 40–41.) If the machine did not display the fee charge, she would withdraw money from the machine. (*Id.* 41.) The sole

reason Plaintiff used the ATMs was to plan for her lawsuit against Defendant. (*Id.* 23–24.) In total, Plaintiff withdrew money from fifteen (15) of Defendant's ATMs. In addition to the two withdrawals on July 29, Plaintiff withdrew money from seven ATMs on August 6, 2009 from locations in Houghton Lake, Kalkaska, Acme, Williamsburg, and three in Traverse City. (Compl. ¶¶ 15(c)-(i).) On March 18, 2010, Plaintiff withdrew money from another six machines located in Interlochen, Manistee, two in Ludington, and another two in Traverse City. (Compl. ¶¶ 15(j)-(o).) She was charged a fee for each of these fifteen withdrawals. (Compl. ¶¶ 15(a)-(o).)

## ELECTRONIC FUND TRANSFER ACT

The Electronic Fund Transfer Act ("EFTA") was enacted in 1978, Pub.L. No. 95–630, § 2001, 92 Stat. 3641 (1978), which amended the comprehensive Consumer Credit Protection Act. The purpose of the EFTA is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems" with its "primary objective" as "the provision of individual consumer rights." 15 U.S.C. § 1693(b) (2009). Included among the protections afforded to individual consumers is the requirement that the operators of ATMs provide notice of the fees charged to consumers.[3] *Clemmer v. Key Bank Nat'l Ass'n,* 539 F.3d 349, 351 (6th Cir.2008). The EFTA requires disclosure of fees imposed by ATMs. 15 U.S.C. § 1693b(d)(3)(A). The fee notice provision states as follows:

(B) Notice requirements

(i) On the machine

The notice required under clause (i) of subparagraph (A) with respect to any fee described in such paragraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

---

Defendant's response, and Plaintiff's reply (ECF No. 21).

**3.** The notification requirement was incorporated into the EFTA when Congress enacted the ATM Fee Reform Act of 1999, Pub.L. No. 106–102,

§§ 701–05, 113 Stat. 1463 (1999), which was part of the larger Gramm–Leach–Bliley Financial Modernization Act. *Bank of America v. City and Cty. of San Francisco,* 309 F.3d 551, 565 n. 8 (9th Cir.2002).

(ii) On the screen

The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction, . . . .

15 U.S.C. § 1693b(d)(3)(B) (2009). The statute prohibits imposition of fees by an ATM when notice is required, but not disclosed in accordance with subparagraph (B). 15 U.S.C. § 1693b(d)(3)(C) (2009).

## LEGAL FRAMEWORK—CLASS SETTLEMENT

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. "The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *In re American Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996) (citing *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). Before certifying a class, the district court must conduct a "rigorous analysis" to determine whether the prerequisites for Rule 23 have been met. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 560 (6th Cir.2008) (quoting *Falcon* ); *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998) (en banc) (citing *Falcon* ).

■ In order to establish a class, the plaintiff must meet all four requirements contained under subsection (a) of Rule 23, and fall within at least one of the subcategories located in subsection (b) of Rule 23. *Beattie,* 511 F.3d at 560; *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of America v. Gen. Motors Corp.,* 497 F.3d 615, 625 (6th Cir.2007); *American Med. Sys., Inc.,* 75 F.3d at 1079. Subsection (a) provides

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. (23)(a). These four prerequisites are often referred to as numerosity, commonality, typicality, and adequacy of representation. *See, e.g., Falcon,* 457 U.S. at 156, 102 S.Ct. 2364; *Powers v. Hamilton Cty. Pub. Defender Comm'n,* 501 F.3d 592, 617 (6th Cir.2007). Plaintiff seeks certification of a class under Fed. R. 23(b)(3), which adds two additional requirements to the four set forth in subsection (a): predominance and superiority. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Subsection (b) provides

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation or claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. 23(b)(3). When determining the viability of class certification, the court must

confine itself to the requirements of Rule 23 and not assess the likelihood of success on the merits. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1201 (6th Cir.1974).

Rule 23(e) applies when the parties seek to settle a class-action suit. *Amchem Prods.,* 521 U.S. at 620–21, 117 S.Ct. 2231. The procedures provided in Rule 23(e) are in addition to, and not in lieu of, class certification under Rule 23(a) and (b). *Id.* at 621, 117 S.Ct. 2231 ("Subdivisions (a) and (b) focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed.") Under Rule 23(e), claims may be settled only with court approval. Rule 23(e) provides for the following procedures when the parties seek court approval of a proposed settlement:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed.R.Civ.P. 23(e).

## ANALYSIS

■ Although Defendant no longer challenges that Plaintiff cannot establish the requirements for class certification, this Court must be satisfied that all the requirements necessary for class certification have been met. *See Falcon,* 457 U.S. at 160, 102 S.Ct. 2364 (explaining that, for class-action suits to be useful, "actual, not presumed, conformance with Rule 23(a) remains, however, indispensable"); *Davis v. Hutchins,* 321 F.3d 641, 649 (7th Cir.2003) ("Rule 23(c) imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions."). Of note is an opinion from the Northern District of Illinois in 2008, which certified a class under similar circumstances. *See Flores v. Diamond Bank,* No. 07–C–6403, 2008 WL 4861511 (N.D.Ill. Nov. 7, 2008); *but see Central Bank and Trust,* 2011 WL 5039786; *Nadeau v. Wells Fargo Bank,* No. 10–4356 (PAM/JSM), 2011 WL 1633131 (D.Minn. Apr. 26, 2011) (memorandum and order denying class certification in an EFTA lawsuit).

## I. Class Definition

■ Before discussing the requirements of Rule 23, the court must first consider whether a precisely defined class exists and whether the named plaintiff is a member of the proposed class. *Thacker v. Chesapeake Appalachia, LLC,* 259 F.R.D. 262, 266 (E.D.Ky. 2009); *Taylor v. CSX Transp., Inc.,* 264 F.R.D. 281, 286 (N.D.Ohio 2007); *Edwards v. McCormick,* 196 F.R.D. 487, 490–91 (S.D.Ohio 2000). Generally, classes should be defined to specify a particular group at a particular time and location who were harmed in a particular manner. *Edwards,* 196 F.R.D. at 491 (citing *Crosby v. Soc. Sec. Admin.,* 796 F.2d 576, 580 (1st Cir.1986)). In addition, the class should be defined so that the court can "ascertain its membership in some objective manner." *Id.* (citing *Crosby*); *see* 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1760 (3d ed. 2005) ("[T]he requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.")

■ The parties propose the following class be certified for settlement purposes only:

All persons who, from April 26, 2009, through May 7, 2010, were charged a transaction fee for the use of an automated teller machine operated by Northwestern Bank at any of the following locations ...

(Joint Mot. ¶ 2.) The parties have identified thirty-five of Northwestern Bank's machines. The proposed class definition meets the requirements for class certification. The requirements for class membership are based on objective, readily ascertainable criteria. The class members will not have to recall whether the fee notice was posted on the machine. To be included in the class, individuals would merely have to establish that they used one of Defendant's ATMs at one of the specified locations during the relevant time period and that they were charged a fee.

## II. Rule 23(a) and (b)

### A. Numerosity (Rule 23(a)(1))

To meet this first requirement, Plaintiff must show that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "There is no strict numerical test for determining the impracticability of joinder." *American Med. Sys., Inc.*, 75 F.3d at 1079 (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir.1976)). "Indeed, '[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.' Nevertheless, while 'the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative.'" *Golden v. City of Columbus*, 404 F.3d 950, 965–66 (6th Cir.2005) (internal citations and citations omitted). However, when the class size reaches a substantial size, impracticability of joinder may be satisfied by numbers alone. *American Med. Sys., Inc.*, 75 F.3d at 1079. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir.2006) (finding the numerosity element satisfied because, in part, the "proposed class includes thousands of individuals"); *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir.2004) ("In this case, Bacon proposes a class of some 800 current and former African–American Honda employees, a number well beyond the point that joinder would be feasible")

■ The numerosity requirement is satisfied. The parties agree that, during the class period, over 127,000 transactions occurred during which Defendant's ATMs imposed fees. (Pl. Br. 5; Def. Resp. 7.) Defendant asserts those transactions involved over 46,000 individual card numbers. (Def. Resp. 7.) Defendant's ATMs are located throughout northwest Michigan. Potential members of the class would likely be concentrated in that area, but would also include individuals passing through who used the ATMs. Assuming the 46,000 individual card numbers represent the same number of card holders, it would not be practicable to join that many individuals in this suit. The sheer number of individual plaintiffs would undermine court's ability to manage the docket in the action and assure the litigation proceeded in an orderly manner.

### B. Commonality (Rule 23(a)(2))

■ To meet this second requirement, Plaintiff must show "there are questions of law or fact common to the class." Fed. R.Civ.P. 23(a)(2). Commonality does not require that all members of the class have an identical injury. *See Mayer v. Mylod*, 988 F.2d 635, 640–41 (6th Cir.1993). The commonality element requires that at least one issue be common to all members of the class. *American Med. Sys., Inc.*, 75 F.3d at 1080 (explaining the test is a qualitative, not quantitative, and "there need be only a single issue common to all members of the class"). Not every common issue, however, will be sufficient to meet the commonality requirement; resolution of this common issue must "advance the litigation." *Sprague*, 133 F.3d at 397.

■ The commonality requirement is satisfied. There are at least two factual issues, common to all members of the class, for which resolution would advance the litigation, including (1) whether Defendant's ATMs posted the required notice, and (2) whether Defendant imposed a fee on the class member during a transaction at one of Defendant's ATMs that lacked the required notice. In addition, the legal question of whether

such fee violated the EFTA would be common to all members of the class.

## C. Typicality (Rule 23(a)(3))

■ To meet this third requirement, Plaintiff must show "the claims and defenses of the representative parties are typical of the claims and defenses of the class." Fed. R.Civ.P. 23(a)(3). This third requirement "limit[s] the class claims to those fairly encompassed by the named plaintiffs' claims." *American Med. Sys., Inc.*, 75 F.3d at 1082. "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory.'" *Beattie*, 511 F.3d at 561 (quoting *American Med. Sys., Inc.*, 75 F.3d at 1082). The claims of the representative plaintiff need not be based on the same set of facts or law as the claims of the other members of the class, so long as there is a common element of fact or law. *Id.* (quoting *Senter*, 532 F.2d at 525 n. 31); *see Daffin*, 458 F.3d at 552–53. "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *American Med. Sys., Inc.*, 75 F.3d at 1082.

■ The typicality element is satisfied. Plaintiff's claims are based on almost identical facts and the same law as the claims of the other members of the class. The claims of the class are fairly encompassed within the claims in the complaint. The claims of the absent class members are or will be almost identical to Plaintiff's claims. By pursuing her own claim, Plaintiff would be advancing the claims and the interests of the entire class.

## D. Adequacy of Representation (Rule 23(a)(4))

■ To meet this fourth requirement, Plaintiff must show that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625, 117 S.Ct. 2231. The Sixth Circuit Court of Appeals has advanced two criteria for determining the adequacy of representation: (1) the representative must have common interests with the unnamed members of the class (common interests), and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel (vigorous prosecution).[4] *American Med. Sys., Inc.*, 75 F.3d at 1083 (citing *Senter*, 532 F.2d at 525). The first factor, common interests, overlaps with the commonality and typicality requirements and serves to ensure that the representative plaintiff has interests that are co-extensive, rather than antagonistic to, the unnamed class members. *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 447 (S.D.Ohio 2009); *see Smith v. Babcock*, 19 F.3d 257, 265 n. 13 (6th Cir.1994) ("No class should be certified where the interests of the members are antagonistic, because the preclusive effect of the verdict may deprive unnamed class members of their right to be heard."). *See generally* 7A Wright, et al., *Federal Practice and Procedure*, §§ 1766 and 1767. The second factor, vigorous prosecution, serves to ensure that the representative

4. In 2003, Rule 23 was amended to include a provision for the selection and appointment of class counsel. *See* Fed. R.Civ. P. 23(g) and 2003 Amendments to Rule 23. In cases prior to the 2003 amendment, courts considered the competency and conflicts of class counsel as part of the fair and adequate representation element. *See Falcon*, 457 U.S. at 158 n. 13, 102 S.Ct. 2364; *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir.2000); *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir.1977). Based on the addition of subsection (g), whether class counsel is qualified or has conflicts should no longer be a factor under subsection (a)(4). *But see Int'l Union*, 497 F.3d at 626. Accordingly, any potential conflict of class counsel would be considered under Fed.R.Civ.P. 23(g), rather than under Rule 23(a)(4). *See Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 268 (E.D.Ky.2009). Here, no objection is raised as to Mr. Bestor's qualifications.

plaintiff has a sufficient financial or personal involvement in the action to motivate them to prosecute the action, as well as have financial resources and legal representation to meet the demands of maintaining a class action. *Id.* at 450. *See generally* 7A Wright, et al., *Federal Practice and Procedure* §§ 1768 and 1769.

▮ Plaintiff will adequately and fairly represent the members of the class. Plaintiff has established that she does not have interests antagonistic to the class. Her injury is the same as other class member. Plaintiff's multiple lawsuits indicate her motivation and willingness to prosecute the action.[5] Plaintiff's attorney can meet the demands of maintaining the class action; he has practiced law for thirty years (Pl. Reply Ex. A–Bestor Dec. ¶ 2) and has filed a number of EFTA class action suits (*Id.*, ¶¶ 4–6.)

### E. Predominance of Common Questions of Law or Fact (Rule 23(b)(3))

▮ Under Rule 23(b)(3), Plaintiff must show that "[common] questions of law and fact ... predominate over any questions affecting only individual members." Fed. R.Civ.P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 622, 117 S.Ct. 2231. To satisfy the predominance requirement, a plaintiff must show that the "issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof" *Beattie*, 511 F.3d at 564 (citation omitted). Under the commonality requirement in subsection (a), there must be a factual or legal question common to the entire class. The predominance requirement asks whether that common factual or legal question "is at the heart of the litigation." *Powers*, 501 F.3d at 619.

▮ The common issues of law and fact predominate. Whether Defendant did nor did not provide the notice of a fee is the central factual question relevant to all members of the class. That factual question can be determined by generalized proof. Whether such notice is required by statute is the central legal question relevant to all members of the class. That legal question is at the heart of the litigation.

### F. Superiority of Class Action (Rule 23(b)(3))

▮ Plaintiff must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Class action is a superior means of adjudicating claims when certifying a class "would achieve economies of time, effort and expense and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc.*, 521 U.S. at 615, 117 S.Ct. 2231 (quoting the Advisory Committee Notes). Class action may be preferred over individual litigation where individual suits would result in small recoveries, which "do not provide the incentive for any individual to bring a solo action for prosecuting his or her rights." *Id.* at 617, 117 S.Ct. 2231 (citation omitted); *Beattie*, 511 F.3d at 567 (quoting *Amchem Prods.*); *see Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625–26 (6th Cir.2005). Lawsuits involving small recoveries arising for technical violations of statutes may be superior to individual litigation because the general public might not be aware of the violations. *Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398, 404 (6th Cir.1980) (upholding the denial of class certification involving claims under the Truth in Lending Act, but noting that, where the general public may be ignorant of the technical require-

---

**5.** Plaintiff's willingness, even eagerness, to subject herself to ATM fees and then file a lawsuit to cry "foul" is sanctioned by the statutory framework. The Court notes that Plaintiff was given notice of a fee on the screen. In fact, she had to affirmatively accept the fee for using the ATM before she could withdraw cash. Whether this genre of litigation was contemplated by Congress represents a policy question for the Legislative and Executive branches of government. That said, by joining this motion, Defendant Northwestern Bank has opted not to challenge Plaintiff's ability to meet the requirements of Rule 23.

ments of a statute, the class action suit could be "the greatest single benefit derived in an area of regulation in which the responsibility of policing falls principally on the shoulders of the private citizen and private counsel.").

■ Here, class action is superior to individual lawsuits. Over the relevant time period at Defendant's ATM machines, there were 46,469 total unique cards used to perform over 127,000 transactions. (Def. Resp. Ex. F–Zerdlow Aff. ¶ 15.) Most members of the class are likely not aware of the technical violation of the statute. The likelihood that many members of the class will choose to bring individual lawsuits is remote.

### III. Identifiability of Class Members

Members of the class must be identifiable. Courts sometimes address this concern when determining whether the class can be defined. *See Oshana v. Coca–Cola Co.,* 472 F.3d 506, 513 (7th Cir.2006) (holding, in addition to the requirements in 23(a) and 23(b), the plaintiff "must also show ... that the class is indeed identifiable as a class.") (citation omitted). Other courts address this concern under the superiority requirement in subsection (b)(3). *See* Fed.R.Civ.P. 23(b)(3)(D); *Villagran v. Cent. Ford, Inc.,* 524 F.Supp.2d 866, 884 (S.D.Tex.2007) ("In inability to identify the overwhelming majority of the members of a proposed class through any means raises significant superiority and manageability problems.") Regardless of where the requirement arises, the need to be able "to identify the class members is of considerable value in framing an order giving discretionary notice under Rule 23(d)(2) as well as in connection with the notice and review of a dismissal or compromise of the action under Rule 23(e)." 7A Wright, et al., *Federal Practice and Procedure* § 1760.

The members of the class are readily identifiable and will not require the court to devote substantial time to individualized determinations. Because the class is defined using objective criteria, proper notice to class members can be made. While individual notice would be preferable, publication notice is an alternative. The proposed members of the class will likely be able to self identify, with proper notification, and using their own bank records, would have little problem proving class membership.

### IV. Approval of Settlement Under Rule 23(e)

Having approved the class for the purpose of settlement, the Court turns to the proposed settlement itself. After an initial review, additional information is needed before the Court will preliminarily approve the fairness of the proposed settlement. The proposed settlement establishes a settlement fund of $200,000. Of that fund, class counsel would receive $80,000, or forty percent, of the settlement fund. That amount exceeds the percentage class counsel received in similar suits. *See Kinder v. ELGA Credit Union,* No. 5:10–cv–11549 (E.D.Mich. Aug. 24, 2011) (final approval order including $15,000 attorney fee and costs constituting 25% of the settlement fund); *Harrison v. Flagstar Bank,* No. 5:09–cv–12687 (E.D.Mich. Aug. 2, 2011) (final approval order including $8,750 attorney fee and costs constituting 25% of the settlement fund); *Harrison v. First Independent Bank,* No. 5:09–cv–12684 (E.D.Mich. Sept. 15, 2011) (final approval order including $40,000 attorney fee and costs constituting 27% of the settlement fund).

Class counsel shall submit sufficient information to justify the proposed award for attorney fee and costs. The issue of whether the proposed settlement is fair, reasonable, and adequate, including the issue of attorney fees, is referred to the Magistrate Judge for a Report and Recommendation.

### CONCLUSION

The parties' Joint Motion for Preliminary Approval of Class–Action Settlement is GRANTED IN PART AND REFERRED IN PART. The Court concludes the proposed class meets the elements in Rule 23(a) and Rule 23(b)(3). The class is CERTIFIED for the purpose of the proposed settlement. The Court finds additional information needs to be submitted before the settlement can be approved. Accordingly, class counsel shall provide the requested information. The is-

sue of settlement approval is REFERRED to the Magistrate Judge for a report and recommendation.

### ORDER

Consistent with the accompanying opinion, **IT IS HEREBY ORDERED** that,

1. The parties' Joint Motion for Preliminary Approval of Class–Action Settlement (ECF No. 41) is **GRANTED IN PART AND REFERRED IN PART.** The portion of the motion requesting class certification for the purposes of settlement is **GRANTED.** The proposed class is **CERTIFIED** for the purpose of settlement. The portion of the motion requesting approval of the proposed settlement is **REFERRED** to the Magistrate Judge for a report and recommendation.

2. Class Counsel **SHALL FILE** any documentation sufficient to establish the fairness and reasonableness of the requested attorney fee and cost award.

3. Plaintiff's request for a hearing on the preliminary approval of the settlement or, in the alternative, entry of an order preliminarily approving the settlement (ECF No. 43) is **DENIED.**