*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0050p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MARTHA VASSALLE; JEROME JOHNSON; HOPE
FRANKLIN; ANDREA BRENT,
　　　　　　　　　　*Plaintiffs-Appellees*,

ROBERT CLAWSON, CHRISTOPHER GUEST,
and MANUELA RIVERA (11-3961); KELLI
GRAY (11-4016); LADON HERRING, GILBERT
JAMES, and ANN RUBIO (11-4019),
　　　　　　　　　　*Objectors-Appellants*,

ELAINE PELZER (11-3814 and 11-4021),
　　　　　　　　　　*Intervenor-Appellant*,

　　　　v.

MIDLAND FUNDING LLC; MIDLAND CREDIT
MANAGEMENT, INC.; ENCORE CAPITAL
GROUP, INC.,
　　　　　　　　　　*Defendants-Appellees*.

Nos. 11-3814/ 3961/ 4016/
4019/ 4021

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:11-cv-00096—David A. Katz, District Judge.

Argued: October 2, 2012

Decided and Filed: February 26, 2013

Before: MOORE and COLE, Circuit Judges; and ROSE, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Ian B. Lyngklip, LYNGKLIP & ASSOCIATES CONSUMER LAW
CENTER PLC, Southfield, Michigan, for Appellant in 11-3814 and 11-4021. Charles
Delbaum, THE NATIONAL CONSUMER LAW CENTER, Boston, Massachusetts, for
Appellants in 11-3961 and 11-4019. Michael D. Kinkley, MICHAEL D. KINKLEY,
P.S., Spokane, Washington, for Appellant in 11-4016. Dennis E. Murray, Sr.,

_____

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio,
sitting by designation.

1

MURRAY & MURRAY CO., L.P.A., Sandusky, Ohio, for Plaintiffs-Appellees. Richard L. Stone, JENNER & BLOCK LLP, Los Angeles, California, for Defendants-Appellees. **ON BRIEF:** Ian B. Lyngklip, LYNGKLIP & ASSOCIATES CONSUMER LAW CENTER PLC, Southfield, Michigan, for Appellant in 11-3814 and 11-4021. Charles Delbaum, THE NATIONAL CONSUMER LAW CENTER, Boston, Massachusetts, David E. Birkhaeuser, BRAMSON PLUTZIK MAHLER & BIRKHAEUSER, LLP, Walnut Creek, California, Adam S. Nightingale, CONNELLY, JACKSON & COLLIER LLP, Toledo, Ohio, Carolyn E. Coffey, MFY LEGAL SERVICES, INC., New York, New York, Matthew A. Dooley, McGLAMERY & LOUGHMAN CO LPA, Sheffield Village, Ohio, for Appellants in 11-3961 and 11-4019. Michael D. Kinkley, Scott M. Kinkley, MICHAEL D. KINKLEY, P.S., Spokane, Washington, for Appellant in 11-4016. Dennis E. Murray, Sr., Donna J. Evans, MURRAY & MURRAY CO., L.P.A., Sandusky, Ohio, for Plaintiffs-Appellees. Richard L. Stone, Amy M. Gallegos, JENNER & BLOCK LLP, Los Angeles, California, Theodore W. Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan, for Defendants-Appellees. Kenneth W. Zeller, AARP FOUNDATION LITIGATION, Washington, D.C., Karuna B. Patel, CENTER FOR RESPONSIBLE LENDING, Washington, D.C., for Amici Curiae.

---

**OPINION**

---

COLE, Circuit Judge. Midland Funding LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc., the defendants-appellees, along with four plaintiffs-appellees, Andrea Brent, Martha Vassalle, Jerome Johnson, and Hope Franklin, sought approval in district court of a nationwide class settlement that settled three related lawsuits. The district court certified the class and approved the settlement. Eight objectors-appellants objected to the settlement, arguing that the settlement was unfair, unreasonable, and inadequate, that the district court abused its discretion in certifying the nationwide settlement class, and that the notice to prospective class members did not satisfy due process. For the following reasons, we REVERSE the district court's order approving the settlement, VACATE the judgment certifying the nationwide settlement class and the award of attorney fees, and REMAND for further proceedings consistent with this opinion.

I.

At issue in this case is a nationwide class settlement of three class-action lawsuits arising from similar factual predicates. In the oldest of the three, *Midland Funding v. Brent*, Midland Funding LLC ("Midland Funding") filed a debt-collection action in April of 2008 against Andrea Brent in the Municipal Court of Sandusky, Ohio. An affidavit signed by an employee of Midland Credit Management, Inc. ("MCM") was attached to the complaint. The affiant claimed personal knowledge that Brent owed a debt of over $4,000 to Midland Funding. In response, Brent brought a class-action counterclaim against Midland Funding and MCM (collectively, "Midland"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and state common law. The counterclaim alleged that MCM employees routinely signed form affidavits, such as the one attached to the complaint filed by Midland Funding against Brent, without personal knowledge of the facts asserted. *Brent* was removed to the Northern District of Ohio on the basis of federal question jurisdiction in June 2008. Following extensive discovery, class counsel filed an Amended Counterclaim Complaint on December 1, 2008, adding a state statutory claim.

On August 11, 2009, the district court issued a self-described "landmark ruling," holding that "robo-signing" affidavits in debt-collection actions violates the FDCPA. The court found the affidavit to be false and misleading under the FDCPA due to the false attestation of personal knowledge. As it turns out, Midland employees had been signing between 200 and 400 computer-generated affidavits per day for use in debt-collection actions, without personal knowledge of the accounts. The court, however, denied declaratory and injunctive relief under the FDCPA.

After a failed attempt at mediation, the district court issued another opinion on November 4, 2010, granting Brent's motion for certification of a class whose members Midland had sued in Ohio courts using false affidavits. The court also granted Midland's motion for partial summary judgment, rejecting Brent's claims for actual

damages under the FDCPA and thereby limiting both her and other similarly-situated debtors to seeking recovery of statutory damages and attorney fees.

While the *Brent* litigation was pending, class plaintiffs brought suit in the other two class actions settled under the settlement agreement. In December of 2009, Hope Franklin and Thomas Hyder brought the *Franklin v. Midland Funding* action in Erie County, Ohio Common Pleas Court, alleging common-law misrepresentation. The *Franklin* action was removed to the Northern District of Ohio. In January of 2011, Martha Vassalle and Jerome Johnson brought the last of the three class actions, *Vassalle v. Midland Funding*, in the Northern District of Ohio. The *Vassalle* suit alleged common-law claims of fraudulent misrepresentation, negligence, and unjust enrichment.

Midland filed a motion to dismiss the *Franklin* action, which the district court granted. Plaintiffs in *Franklin* then appealed to this Court. After the appeal, we granted the motion of the parties, on May 27, 2011, pursuant to Sixth Circuit Rule 12.1, to remand the case to the district court. That same day, the district court approved the parties' joint motion "to preliminarily approve their Class Settlement Agreement, to authorize class notice, for an order enjoining parallel litigation, and to schedule a Fairness Hearing on the class settlement."

After two weeks of settlement conferences, the parties in the *Brent*, *Franklin*, and *Vassalle* actions finally reached an agreement and presented it to the court on March 9, 2011. In the settlement, the parties stipulated to the certification of a class that included "[a]ll natural persons" sued by Midland between January 1, 2005, and the date upon which the court would enter preliminary approval of the class action settlement "in any debt collection lawsuit in any court . . . where an affidavit attesting to facts about the underlying debt was used by Midland in connection with the debt collection lawsuit."

The settlement provided for both monetary and injunctive relief. Midland agreed to pay $5.2 million into a common fund for the benefit of the class. From this fund, class counsel would receive attorney fees of no more than $1.5 million, and the costs of administration. From the remainder of the fund, eligible class members who timely

returned a claim form would receive payments of $10.00 each. In fact, however, the response rate was such that each class member would receive $17.38. In addition, the four named plaintiffs were to receive $8,000 collectively.

Under the injunctive portion of the settlement, Midland agreed to "create and implement written procedures for the generation and use of affidavits in debt collection lawsuits in order to prevent the use of affidavits where the affiant lacks personal knowledge of the facts set forth in the affidavit." A retired federal judge was appointed to monitor Midland's compliance with the injunction, which was to last one year.

The settlement also included a classwide release, which provided that each class member who did not opt out would release Midland and its attorneys "from all causes of action . . . which the class now has . . . against the Released Parties, arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits." The named plaintiffs granted Midland a broader release of "all causes of action." Midland agreed to release the debts owed by the named plaintiffs, but reserved the right to continue attempting to collect debts owed by the unnamed class members.

The court granted preliminary approval of the settlement on March 11, 2011. Out of a class that included approximately 1.4 million members, over 133,000 class members, or 9.2% of the class, filed claims, while 4,262, or about 0.3%, opted out, and 61, or about 0.004%, filed objections.

On May 17, 2011, the district court granted a motion to dismiss the *Brent* action for lack of subject matter jurisdiction. The district court found that it lacked jurisdiction because the federal question that formed the basis of Brent's claims was found in a counterclaim, not in the original complaint filed by Midland. The district court remanded the *Brent* case to state court, and the state court dismissed Midland's claim against Brent and ordered realignment of the parties. Brent then filed an amended complaint, and the action was again removed to the district court on June 29, 2011.

On June 1, 2011, class member Elaine Pelzer moved to intervene in the class action for the purpose of conducting discovery regarding the fairness of the proposed settlement. The district court denied Pelzer's motion, but permitted her intervention "for the sole purpose of presenting her objections to the proposed settlement." Pelzer appealed this ruling to this Court, arguing that she was entitled to permissive intervention under Rule 24(b).

On August 12, 2011, the United States District Court for the Northern District of Ohio granted final approval of the settlement. From this opinion, eight unnamed class members appealed.

## II.

Kelli Gray, an objector-appellant, argues that the district court lacked subject matter jurisdiction over both the *Brent* and the *Franklin* cases. Gray argues that the district court lacked jurisdiction over the *Franklin* case both at the time of the settlement and at the time the notice was sent because "the *Franklin* case was dismissed on October 6, 2010." Gray also argues that the district court "never had subject matter jurisdiction" over the *Brent* case, and therefore, "all proceedings were void." Courts have held that they may not approve a settlement if they lack subject matter jurisdiction over the case that has settled. *See, e.g.*, *Villegas v. Pep Boys Manny Moe & Jack of Cal.*, 551 F. Supp. 2d 982, 992 (C.D. Cal. 2008) ("A court either has jurisdiction or it does not. Having determined that it lacks jurisdiction, the Court is unable to approve the settlement.")

Contrary to Gray's assertions, the district court had subject matter jurisdiction over both the *Franklin* and the *Brent* cases at the time it granted final approval of the settlement. Although the district court dismissed the *Franklin* case, we granted the joint motion of the parties, on May 27, 2011, to remand the case to the district court. That same day, the district court approved the parties' joint motion "to preliminarily approve their Class Settlement Agreement, to authorize class notice, for an order enjoining parallel litigation, and to schedule a Fairness Hearing on the class settlement." The

district court therefore had subject matter jurisdiction over the *Franklin* case when it approved the settlement on August 12, 2011.

The district court also had subject matter jurisdiction over the *Brent* case at the time it approved the settlement. After the district court remanded the *Brent* case to state court on May 17, 2011, the state court dismissed Midland's claim against Brent and ordered realignment of the parties. Brent then filed an amended complaint, and the action was properly removed to the district court, pursuant to 28 U.S.C. § 1441, on June 29, 2011.

III.

*A. Approval of Settlement*

Before a district court approves a settlement, the court must find that the settlement is "'fair, reasonable, and adequate.'" *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)(1)(C)). A district court's approval of a settlement "'is discretionary . . . and will be overturned only by a showing of abuse of discretion.'" *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 647 (6th Cir. 2009) (quoting *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 803 F.2d 878, 880 (6th Cir. 1986)). An abuse of discretion occurs when the court "'commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact.'" *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010) (quoting *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008)).

A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. When we review a proposed class action

settlement, we grant the district court "wide discretion in assessing the weight and applicability" of the relevant factors. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). We have held that we "cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)).

Although not included in the seven *UAW* factors, in evaluating the fairness of a settlement we have also looked to whether the settlement "gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Williams v. Vukovich*, 720 F.2d 909, 925 n.11 (6th Cir. 1983). We have held that such inequities in treatment make a settlement unfair. *See id.*[1]; *Franks v. Kroger Co.*, 649 F.2d 1216, 1226 (6th Cir. 1981) ("As appellants correctly argue, the 'preferred positions' of the named plaintiffs should have signaled the district court of potential inequities in this proposed settlement."), *on reh'g*, 670 F.2d 71 (6th Cir. 1982) (vacating prior opinion on other grounds and reinstating settlement). At least two other circuits are in accord. *See Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983) ("'[W]here representative plaintiffs obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as to the fairness of the settlement to the class.'") (quoting *Plummer v. Chem. Bank*, 91 F.R.D. 434, 441-42 (S.D.N.Y. 1981), *aff'd*, 668 F.2d 654 (2d Cir. 1982)); *Plummer*, 91 F.R.D. at 442 ("While there may be circumstances in which additional benefits to the named plaintiffs may be justified, such disparities must be regarded as prima facie evidence that the settlement is unfair to the class, and a heavy burden falls on those who seek approval of such a settlement." (citations omitted)).

---

[1]We did not hold in *Williams* that the benefits awarded to the named plaintiffs were "disproportionate" to the benefits awarded to the unnamed class members. *Id.* We suggested, however, that "the record should contain some justification for future awards which have the appearance of being maldistributed." *Id.* Here, we find the benefits awarded to the named plaintiffs *were* disproportionate to the benefits awarded to the unnamed class members. Even if they were not disproportionate, we would still hold the inequities in treatment here are unfair because the record contains no justification for these inequities.

The district court in this case weighed the seven factors and found that each was satisfied. While the court did not abuse its discretion in its determination of any of the seven listed factors, the disparity in the relief afforded under the settlement to the named plaintiffs, on the one hand, and the unnamed class members, on the other hand, made the settlement unfair. Despite the wide discretion we must afford the district court in applying these factors, this disparity in relief is so great that we conclude the district court abused its discretion in finding that the settlement was fair, reasonable, and adequate.

Here, like in *Williams*, the named plaintiffs receive "preferential treatment," while the relief provided to the unnamed class members is "perfunctory." *See Williams*, 720 F.2d at 925 n.11. The named plaintiffs receive two benefits from the settlement that the unnamed class members do not receive. First, the named plaintiffs receive the primary benefit of the settlement: the exoneration of debts owed to Midland. If the 1.44 million unnamed class members received this benefit, like Brent, they would be absolved of debts in the hundreds or even thousands of dollars. Instead, the settlement actually prevents the unnamed class members from using Midland's use of false affidavits against Midland in any other lawsuit, virtually assuring that Midland will be able to collect on these debts.

Second, the named plaintiffs receive an $8,000 incentive payment to be split amongst the four of them. While we have "never explicitly passed judgment on the appropriateness of incentive awards," we have found that "there may be circumstances where incentive awards are appropriate." *Hadix v. Johnson*, 322 F.3d 895, 897-98 (6th Cir. 2003). Other circuits have more explicitly approved of incentive awards. *See, e.g.*, *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1037-38 (8th Cir. 2002) (approving an award of $2,000 to each of five representative plaintiffs where the common fund consisted of $5 million to be split among a class of four million); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). Because we find the settlement is unfair

to the unnamed class members in light of Midland's exoneration of the named plaintiffs' debts, it is unnecessary for us to pass on the appropriateness of incentive awards.

Finally, the relief actually provided to the unnamed class members is perfunctory at best. First, provided they respond to the notice, the unnamed class members receive $17.38. Second, the settlement provides for one year of injunctive relief, overseen by a retired federal judge, under which Midland is required to change its policies. The $17.38 payment can only be described as *de minimis*, especially in comparison to the now-forgiven debt of $4,516.57 owed by Brent. We can safely assume that many of the 1.44 million class members' debts are in the thousands or at least hundreds of dollars. The one-year injunction is likewise of little value for three reasons. First, it does not actually prohibit Midland from creating false affidavits; rather, it only requires Midland to change its policies and provides oversight of this process. Second, the injunction only lasts one year, after which Midland is free to resume its predatory practices should it choose to do so. Third, the injunction offers only prospective relief that likely does not benefit class members at all.

For the foregoing reasons, the settlement was unfair to the unnamed class members, and the district court therefore abused its discretion in approving the settlement as "fair, reasonable, and adequate."

*B. Certification of Nationwide Settlement Class*

To certify a class action, a district court must find that the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and fits into one of the three categories in Rule 23(b). Under Rule 23(a), a class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation. Because the district court certified the class under Rule 23(b)(3), the class must satisfy the additional requirements of superiority and predominance. We review a district court's order as to class certification for abuse of discretion. *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 643 (6th Cir. 2006).

Although the class satisfies four of these six certification requirements—numerosity, commonality, typicality and predominance—the representation is not adequate under Rule 23(a) nor is the class action vehicle superior under Rule 23(b)(3). The district court therefore abused its discretion in certifying the nationwide settlement class.

### i. Adequacy of Representation

The district court found that the putative class satisfied the adequacy of representation factor. We use a two-prong test to determine whether the class representatives will "fairly and adequately protect the interests of the class" under Rule 23(a)(4): "'1) [T]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). In addition, we "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (citation omitted). Finally, "'[o]nly when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate.'" *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 431 (6th Cir. 2012) (quoting *Pasternak v. Colonial Equities Corp./U.S.A.*, No. H-90-829 (JAC), 1993 WL 306526, at *5 (D. Conn. Feb. 10, 1993)).

Two of these factors weigh in favor of finding adequate representation. First, the class representatives shared common interests with the unnamed class members: they all shared a desire to obtain both monetary and injunctive relief from Midland. Second, it is undisputed that class counsel here is "qualified, experienced, and generally able to conduct the litigation."

Another two of these factors, however, weigh against such a finding. We find that these second two factors are dispositive. First, the class representatives have no interest in vigorously prosecuting the unnamed class members' most important interest—the ability to use the false affidavits against Midland to contest their debts in court. This is because, under the settlement, the class representatives' debts are forgiven. Second, for the same reason, the class representatives have an interest that is antagonistic to an interest of the unnamed class members: the class representatives are interested in ensuring the settlement is approved so that their debts to Midland will be forgiven, while the unnamed class members are interested in ensuring the settlement is not approved so they can retain the right to challenge Midland's false affidavits in court.

Under the *Rooker-Feldman* doctrine, the fact that the district court could not itself have vacated the state court judgments against the unnamed class members does not weigh in favor of finding adequate representation. The district court had the option to reject the settlement, which would have left the unnamed class members free to seek the vacatur of the judgments against them. Here, the "'attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members.'" *Gooch*, 672 F.3d at 431 (quoting *Pasternak*, 1993 WL 306526, at *5). Accordingly, we find the district court abused its discretion in finding the adequacy of representation factor was satisfied.

### ii. Superiority

The district court also found that this case satisfied the superiority requirement under Rule 23(b)(3). As the court noted, it may look to the following factors in making this evaluation: "(1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the existence of pending litigation concerning the same controversy; (3) the desirability of concentrating the litigation of the claims in this forum; (4) the difficulties likely to be encountered in the management of the class action." The district court referenced the third factor in holding that the putative class satisfied the superiority factor: "Given the limited resources of the typical

class member and the meager monetary relief they could expect to recover, there is a strong interest in litigating these claims in a single forum." The court also held "this case is far more procedurally advanced than the other actions bringing similar claims, ensuring that the class members may obtain relief more speedily than if the litigation were permitted to proceed piecemeal."

We recently considered the superiority factor in *Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532 (6th Cir. 2012). We noted that "'[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.'" *Id.* at 545 (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)). In *Young*, we went on to note that "[w]here many individual inquiries are necessary, a class action is not a superior form of adjudication. However, where a threshold issue is common to all class members, class litigation is greatly preferred." *Id.* (citations omitted). Finally, we noted that under the facts of the case, where defendant insurers, in violation of a local tax statute, allegedly overcharged the insureds in an amount "ranging from $32.60 to $126," because most class members were probably unaware that the insurers' actions violated the statute, it was unlikely that many class members would elect to bring individual lawsuits. *Id.* at 535, 545 (citing *Kinder v. Nw. Bank*, 278 F.R.D. 176, 186 (W.D. Mich. 2011)).

The majority of these considerations weigh in favor of finding the superiority factor was satisfied. First, most class members had "limited resources." Second, this case is "far more procedurally advanced" than the other actions bringing similar claims. Third, a threshold issue—whether Midland was liable under the FDCPA—was common to all class members.

There are, however, two considerations weighing against such a finding. First, unnamed class members had an interest in individually controlling the defense of Midland's state court judgments against them. Second, the class members could have

collected damages under state law claims that would exceed the value of monetary relief in this settlement. These two considerations tilt the scales in favor of a finding that the class action here was not the superior method of resolving the controversy.

The interest of the unnamed class members in individually controlling the defense of Midland's state court judgments against them is their strongest interest: under the settlement, they are left without a crucial defense against these judgments. And unlike in *Young*, the likelihood that many members of the class will choose to bring individual lawsuits is not remote. First, several parallel federal and state class actions have already been commenced against Midland outside of the Sixth Circuit, at least one of which is still pending. Second, whereas in *Young*, the unnamed class members were unaware that they were being overcharged, the unnamed class members here are surely aware of the judgments Midland has obtained against them. Accordingly, we find the district court abused its discretion in finding the superiority factor was satisfied.

Because the class here satisfies neither the adequacy of representation factor nor the superiority factor, we hold the district court abused its discretion in certifying the nationwide settlement class.

## C. Notice to the Class and Due Process

The district court erred in finding that the notice to the class satisfied due process. We have held that due process requires that notice to the class be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Due process, however, "does not require the notice to set forth every ground on which class members might object to the settlement." *Id.* at 630. Rather, "[a]ll that the notice must do is 'fairly apprise the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)). We review de novo a finding that notice

to the class satisfies due process. *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008). Here, the district court erred in finding that the notice to class members satisfied due process.

Appellants cite several alleged deficiencies in class notice, one of which is dispositive. Namely, the notice does not explain the fact that the release of claims impairs the class members' ability to vacate the allegedly fraudulent judgments Midland obtained against them in state court lawsuits. Rather, the notice only states that by not objecting, the class members give Midland a "release." The notice states that "[a] release means you can't sue or be part of any other lawsuit against [Midland] about the claims or issues in this lawsuit, or any other claims arising out of affidavits attached or executed in support of collection complaints filed against Class Members by [Midland]." This language is insufficient to notify a non-attorney class member that by not objecting, he or she loses the right to use Midland's false affidavits against Midland in their debt-collection actions. The failure of the notice to mention this fact is not just "any ground" on which a class member might object; rather, it is the principal ground. The unnamed class members' greatest interest is their ability to contest these allegedly fraudulent judgments. For this reason, the class notice does not "'fairly apprise . . . prospective members of the class of the terms of the proposed settlement.'" *UAW*, 497 F.3d at 630 (quoting *Grunin*, 513 F.2d at 122). Accordingly, we find the district court erred in finding that the notice to the class satisfied due process.[2]

*D. Pelzer Motion to Intervene*

The district court did not abuse its discretion in granting objector Elaine Pelzer's motion to intervene "for the sole purpose of presenting her objections to the proposed settlement, and for no other purpose." Pelzer argues to the contrary, asserting that, in addition to presenting her objections, she should have the right to conduct discovery

---

[2] Midland argues that the unnamed class members could have protected their rights by opting out of the settlement. While the unnamed class members did have the right to opt out of this settlement, this right is an illusory one when the class notice form failed to inform them of their most significant ground of objection.

regarding the fairness of the proposed settlement.  The district court denied Pelzer the right to conduct discovery, holding that she "fail[ed] to meet the elements required by this Circuit to mandate such intervention."  In addition, the district court refused "at this late date (less than three (3) weeks prior to the fairness hearing)" to "permit [Pelzer] to intervene to the extent requested."  Pelzer argued to the district court that she should be allowed to intervene under both Federal Rule of Civil Procedure 24(a) (intervention of right) and Rule 24(b) (permissive intervention).  On appeal, however, Pelzer argues only that she should be allowed to intervene under Rule 24(b).

We review "a district court's denial of permissive intervention for 'clear abuse of discretion.'"  *Blount-Hill v. Zelman*, 636 F.3d 278, 287 (6th Cir. 2011) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991)).  Under Rule 24(b), a court ruling on a motion for permissive intervention must consider two factors:  (1) whether the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact"; and (2) "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B); 24(b)(3).  The first factor, which weighs in favor of permissive intervention, is undoubtedly satisfied here:  as Pelzer notes in her brief, "the [district court] had already found the [sic] Ms. Pelzer possessed a claim which was common to the class representatives."  The second factor, however, which weighs against permissive intervention, is also satisfied:  permitting Pelzer to intervene to the extent requested, a mere three weeks prior to the fairness hearing, would unduly delay the adjudication of the original parties' rights.  Accordingly, we find the district court did not abuse its discretion in granting Pelzer the right to intervene only to present her objections.

*E.  Attorney Fees*

Gray challenges the award of fees in the settlement to the attorneys for the plaintiff class.  Because we have already held that the district court abused its discretion both in approving the settlement and in certifying the nationwide settlement class, Gray's arguments regarding attorney fees are rendered moot. *See Dennis v. Kellogg Co.*,

697 F.3d 858, 868 n.2 (9th Cir. 2012) (citation omitted) (where circuit court reverses district court's order approving class settlement and vacates judgment, attorney fees issue is rendered moot).

## IV.

For the foregoing reasons, we REVERSE the district court's order approving the settlement, VACATE the judgment certifying the nationwide settlement class and the award of attorney fees, and REMAND for further proceedings consistent with this opinion.