**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0382n.06

**Case No. 14-4156**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jul 07, 2016

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ELAINE PELZER; DIANNE FREDERICK; RAUL OSORIO, | ) ) ) | |
| *Intervenors-Appellants*, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
| MARTHA VASSALLE; JEROME JOHNSON; ANDREA BRENT; HOPE FRANKLIN; CLASS MEMBERS, | ) ) ) ) | |
| | ) | O P I N I O N |
| *Plaintiffs-Appellees* | ) ) | |
| MIDLAND FUNDING LLC; MIDLAND CREDIT MANAGEMENT, INC.; ENCORE CAPITAL GROUP, INC., | ) ) ) ) | |
| *Defendants-Appellees*. | ) ) ) | |

BEFORE:     COLE, Chief Judge; MOORE, Circuit Judge; ROSE, District Judge. [*]

COLE, Chief Judge.   This is our second time reviewing a proposed settlement of three

class actions alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§§ 1692–1692p, and various state law claims.   Last time, we held that the proposed settlement

was not fair, reasonable, or adequate, that class certification should not have been granted, and

---

[*] The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

that the class notice did not satisfy due process. *Vassalle v. Midland Funding LLC* (*Vassalle I*), 708 F.3d 747 (6th Cir. 2013). We remanded the case to the district court for further proceedings.

On remand, the parties negotiated a new settlement that addresses the problems we noted the first time around. Most importantly, the release of claims has been revised to align the interests of the named plaintiffs and unnamed class members. The district court approved the revised settlement and class notice, and certified the class. As before, a group of objectors appeals those decisions.

This time, we affirm.

## I. BACKGROUND

### A. Prior Decision

We related the background of this case in *Vassalle I*:

At issue in this case is a nationwide class settlement of three class-action lawsuits arising from similar factual predicates. In the oldest of the three, *Midland Funding v. Brent*, Midland Funding LLC ("Midland Funding") filed a debt-collection action in April of 2008 against Andrea Brent in the Municipal Court of Sandusky, Ohio. An affidavit signed by an employee of Midland Credit Management, Inc. ("MCM") was attached to the complaint. The affidavit claimed personal knowledge that Brent owed a debt of over $4,000 to Midland Funding. In response, Brent brought a class-action counterclaim against Midland Funding and MCM (collectively, "Midland"), alleging violations of the [FDCPA], and state common law. The counterclaim alleged that MCM employees routinely signed form affidavits, such as the one attached to the complaint filed by Midland Funding against Brent, without personal knowledge of the facts asserted. *Brent* was removed to the Northern District of Ohio on the basis of federal question jurisdiction in June 2008. Following extensive discovery, class counsel filed an Amended Counterclaim Complaint on December 1, 2008, adding a state statutory claim.

On August 11, 2009, the district court issued a self-described "landmark ruling," holding that "robo-signing" affidavits in debt-collection actions violates the FDCPA. [*Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 970 (N.D. Ohio 2009).] The court found the affidavit to be false and misleading under the FDCPA due to the false attestation of personal knowledge. As it turns out, Midland employees had been signing between 200 and 400 computer-generated affidavits per day for use in debt-collection actions, without personal knowledge

of the accounts. The court, however, denied declaratory and injunctive relief under the FDCPA.

After a failed attempt at mediation, the district court issued another opinion on November 4, 2010, granting Brent's motion for certification of a class whose members Midland had sued in Ohio courts using false affidavits. The court also granted Midland's motion for partial summary judgment, rejecting Brent's claims for actual damages under the FDCPA and thereby limiting both her and other similarly-situated debtors to seeking recovery of statutory damages and attorney fees.

While the *Brent* litigation was pending, class plaintiffs brought suit in the other two class actions settled under the settlement agreement. In December of 2009, Hope Franklin and Thomas Hyder brought the *Franklin v. Midland Funding* action in Erie County, Ohio Common Pleas Court, alleging common-law misrepresentation. The *Franklin* action was removed to the Northern District of Ohio. In January of 2011, Martha Vassalle and Jerome Johnson brought the last of the three class actions, *Vassalle v. Midland Funding*, in the Northern District of Ohio. The *Vassalle* suit alleged common-law claims of fraudulent misrepresentation, negligence, and unjust enrichment. . . .

[T]he parties in the *Brent*, *Franklin*, and *Vassalle* actions finally reached an agreement and presented it to the [district] court on March 9, 2011. In the settlement, the parties stipulated to the certification of a class that included "[a]ll natural persons" sued by Midland between January 1, 2005, and the date upon which the court would enter preliminary approval of the class action settlement "in any debt collection lawsuit in any court . . . where an affidavit attesting to facts about the underlying debt was used by Midland in connection with the debt collection lawsuit."

The settlement provided for both monetary and injunctive relief. Midland agreed to pay $5.2 million into a common fund for the benefit of the class. From this fund, class counsel would receive attorney fees of no more than $1.5 million, and the costs of administration. From the remainder of the fund, eligible class members who timely returned a claim form would receive payments of $10.00 each. In fact, however, the response rate was such that each class member would receive $17.38. In addition, the four named plaintiffs were to receive $8,000 collectively.

Under the injunctive portion of the settlement, Midland agreed to "create and implement written procedures for the generation and use of affidavits in debt collection lawsuits in order to prevent the use of affidavits where the affiant lacks personal knowledge of the facts set forth in the affidavit." A retired federal judge was appointed to monitor Midland's compliance with the injunction, which was to last one year.

The settlement also included a classwide release, which provided that each class member who did not opt out would release Midland and its attorneys "from all

> causes of action . . . which the class now has . . . against the Released Parties, arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits." The named plaintiffs granted Midland a broader release of "all causes of action." Midland agreed to release the debts owed by the named plaintiffs, but reserved the right to continue attempting to collect debts owed by the unnamed class members.

> The [district] court granted preliminary approval of the settlement on March 11, 2011. Out of a class that included approximately 1.4 million members, over 133,000 class members, or 9.2% of the class, filed claims, while 4,262, or about 0.3% opted out, and 61, or about 0.004% filed objections.

> On August 11, the United States District Court for the Northern District of Ohio granted final approval of the settlement.

*Vassalle I*, 708 F.3d at 751–53. Eight of the objectors appealed.

We first held the district court abused its discretion in finding the settlement to be fair, reasonable, and adequate. Specifically, we found that the named class members would have received "preferential treatment," while the unnamed class members received "perfunctory" relief. *Id.* at 755–56. The named class members would have had their debts to Midland forgiven and each received $2,000, while the unnamed class members would have received a mere $17.38 each and been forever barred from using the falsity of the affidavits to contest Midland's debt-collection actions. We also found the injunctive relief would provide little value to class members. *Id.* at 756.

We next held that the district court abused its discretion in certifying the nationwide settlement class. First, because of the disparity in relief between the named plaintiffs and unnamed class members—particularly that the named plaintiffs' debts would be forgiven—the named plaintiffs had interests antagonistic to those of the unnamed class members, and thus were not adequate representatives. *Id.* at 756–57. Second, the unnamed class members' "interest in individually controlling the defense of Midland's state court judgments against them," when combined with the possibility of collecting greater damages under the released state law claims, made this class action not superior to other forms of litigation. *Id.* at 757–58.

We also found that the proposed class notice did not satisfy due process. The notice did not explain that the release would have impaired the class members' ability to use the false affifavits against Midland in debt-collection actions. Because this was "the principal ground" on which a class member might object, we held that it did not "fairly apprise . . . prospective members of the class of the terms of the proposed settlement." *Id.* at 759 (quotation marks omitted).

We therefore reversed the district court's order approving the settlement, vacated the judgment certifying the nationwide settlement class and the award of attorneys' fees, and remanded the case for further proceedings. *Id.* at 760.

**B. New Settlement**

On remand, the parties engaged in a new round of settlement negotiations, this time with the input of the objectors. They reached a new settlement taking into account the concerns we identified in our prior opinion.

While the case was pending on appeal, the parties began implementing the stipulated injunctive relief of the original settlement. In the revised settlement, the injunctive relief remains in place. (Revised Class Action Settlement Agreement, Vassalle R. 227-1, PageID 4053–54.) Under this provision, Midland must "create and implement procedures for the generation and use of affidavits in debt-collection lawsuits, which procedures would be reasonably assured to prevent the use of affidavits in debt-collection lawsuits where the affiant lacked personal knowledge of the facts set forth in the affidavit." (*Id.* at PageID 4053.) A retired federal judge has been appointed Special Master to monitor Midland's compliance with the injunction, and has issued orders approving certain language in the revised affidavits. (*Id.*) The term of this stipulated injunction has been extended to last for five years instead of one. (*Id.* at PageID

4054.) Both parties retain the right to seek relief from or modification of the approved affidavits. (*Id.*)

The amount of compensation to the class has not changed. Midland will still pay $5.2 million into a common fund. (*Id.* at PageID 4051.) Of that amount, $1.5 million has already been paid to class counsel under a "quick pay" provision, but must be returned if the settlement is not approved. (*Id.* at PageID 4054–55). About $1.2 million has already been paid to the Class Administrator to cover the cost of administering the settlement. That leaves about $2.5 million to pay damages to the class members. Once again, about 133,000 people have filed claims; each of these people will receive $18.75. The amount awarded to four named plaintiffs has been cut in half, to $1,000 each. (*Id.* at PageID 4051.)

In exchange, the class releases all claims against Midland under state or federal law "in which a Class Member seeks any relief on the ground that an affidavit used in a debt-collection lawsuit brought by Defendants was executed by a person who lacked personal knowledge of the facts stated in the affidavit." (*Id.* at PageID 4056.) An exception to the release explicitly allows class members to "attempt to seek relief from judgment in Midland's favor on the ground that an affidavit filed in the underlying debt-collection action was executed by a person who lacked personal knowledge of the facts stated in the affidavit." (*Id.* at PageID 4057.) However, class members may not seek such relief collectively—either as a class action, or "on behalf of two or more judgment-debtors." (*Id.*) Class members also "may not seek any relief other than vacatur of the judgment and, if permissible under applicable law, return of any money paid on the judgment." (*Id.*) For those class members whose debt-collection actions are still being litigated, and thus do not have judgments entered against them, the exception to the release allows them to raise "any applicable defenses" and "challeng[e] the admissibility of any affidavit." (*Id.*)

The named plaintiffs will no longer have their debts forgiven. Instead, Midland is explicitly allowed to "continu[e] to attempt to collect the debts owed by any named Plaintiff or any other Class Member." (*Id.* at PageID 4058.)

The stipulated class is defined to include all people Midland sued in debt-collection actions between January 1, 2005, and March 11, 2011, using an affidavit attesting to facts about the underlying debt. (*Id.* at PageID 4050.) It is worth noting that membership in the class does not depend on the outcome of the individual debt-collection action. Some of those people have had judgments entered against them, either because they did not contest the suit or because they fought and lost. Others are still litigating against Midland. Others fought Midland in court and won, either on the merits or because Midland dismissed their cases.

The notice to class members has also been revised to reflect the updated terms of the settlement. *See* Fed. R. Civ. P. 23(e)(1), 23(e)(4). It describes the nature of the underlying suit, the terms of the settlement including the release of claims and the exceptions to the release, the class members' ability to opt out, and provides contact information for class members seeking additional information. (Class Notice, Vassalle R. 258-1, PageID 4727–35.) The notice was mailed to 1,443,893 individuals on January 24, 2014. (*Id.* at PageID 4723.) Of those, 133,122 individuals filed claims, and 1,890 individuals opted out. (*Id.* at PageID 4725.)

The district court preliminarily approved the revised settlement on November 27, 2013. On May 15, 2014, the district court held a fairness hearing. *See* Fed. R. Civ. P. 23(e)(2). Counsel for the parties and the objectors presented argument. On October 14, 2014, the district court issued an opinion and order approving the revised settlement, certifying the class, and finding the notice adequate. (Memorandum Op., Vassalle R. 281, PageID 5613–34; Judgment Entry, Vassalle R. 282, PageID 5635–39.) The district court also awarded class counsel their

requested fee of $1.5 million plus $14,809 in expenses. (Judgment Entry, Vassalle R. 282, PageID 5639.)

As before, a group of objectors appeal the district court's approval of the settlement, approval of the class notice, and certification of the class. *See Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002) (allowing objecting class members to appeal the approval of a class action settlement).

## II. ANALYSIS

We begin our analysis by noting that under the law of the case doctrine, "courts should not 'reconsider a matter once resolved in a continuing proceeding.'" *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (quoting 18B Charles Alan Wright, et al., Federal Practice and Procedure: Jurisdiction and Related Matters § 4478 (4th ed. 2015)). The doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506 (2011) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). It is, however, a prudential doctrine that merely "directs [our] discretion, it does not limit [our] power." *Arizona*, 460 U.S. at 618. We may revisit our prior holdings when confronted with new evidence or relevant law, or if we are convinced our prior decision was clearly erroneous and adhering to it would work a manifest injustice. *See White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir. 1967); *see generally* 18B Wright, et al., *supra*, § 4478.

It is also important at the outset to define clearly what this case is, and is not, about. This case is about a very specific issue: Midland's use of affidavits in debt-collection actions where the affiants falsely attest to have personal knowledge of the consumers' accounts. This case is not about Midland's other alleged abusive practices in its business of buying and then collecting consumer debt accounts. *See generally, e.g.*, Amicus Br. of AARP, Dkt. 23, at 7–17; Consent

Order, *Encore Capital Group, Inc., et al.*, Admin. Proceeding No. 2015-CFPB-0022 (Consumer Financial Protection Bureau Sept. 9, 2015). Nor is it an opportunity to litigate the merits of individual class members' debt-collection actions, whether still pending or having been reduced to judgment in state court. The settlement before us seeks to resolve classwide allegations regarding a particular alleged FDCPA violation and analogous state law claims, and no more.

## A. Approval of Settlement

A district court must find a settlement to be "fair, reasonable, and adequate" for it to be approved. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)(1)(C)). We review its approval of a settlement for abuse of discretion. *Robinson v. Shelby Cnty. Bd. Of Educ.*, 566 F.3d 642, 647 (6th Cir. 2009).

The district court considers seven factors in making this finding: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. While the district court has "wide discretion" to weigh these factors, *see Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992), we may reverse its approval if the settlement "gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Williams v. Vukovich*, 720 F.2d 909, 925 n.11 (6th Cir. 1983).

In *Vassalle I*, we found that the district court did not abuse its discretion in considering any of the seven factors, but that "the disparity in the relief afforded" the named plaintiffs and other class members nevertheless "made the settlement unfair." *Vassalle I*, 708 F.3d at 755. We found two preferential benefits afforded the named plaintiffs that the class members would not

have received: *first*, the named plaintiffs' debts to Midland would have been extinguished while the unnamed class members would have been effectively barred from challenging Midland's claims against them, and *second*, the named plaintiffs would have split an $8,000 incentive payment. *Id.* at 755–56. Against these benefits, we found the relief to class members perfunctory for two reasons: *first*, unnamed class members who filed claims would only receive $17.38, and *second*, the one-year injunctive relief was unlikely to benefit the class members. *Id.* at 756.

The revised settlement sufficiently cures these problems. The named plaintiffs no longer receive debt relief, and the entire class now retains the ability to use the false affidavits to challenge Midland's debt-collection actions. The incentive awards to the named plaintiffs have also been decreased. Thus, the value of the relief afforded the named plaintiffs and unnamed class members is no longer so disparate as to be unfair. Furthermore, changed circumstances suggest that the injunctive relief is now a more robust remedy. The district court did not abuse its discretion in approving the revised settlement.

*1. Debt Relief, Release of Claims, and Money Damages*

Our prior statement that the relief to unnamed class members "is perfunctory at best," *id.* at 756, must be evaluated in context. We "safely assume[d] that many of the 1.44 million class members' debts are in the thousands or at least hundreds of dollars." *Id.* However, the settlement would have "actually prevent[ed] the unnamed class members from using Midland's use of false affidavits against Midland in any other lawsuit, virtually assuring that Midland will be able to collect on these debts." *Id.* at 755. In light of this reality, "[t]he $17.38 payment c[ould] only be described as *de minimis*, especially in comparison to the now-forgiven debt of $4,516.57 owed by Brent." *Id.* Thus, the most important part of our analysis was not the

absolute value of the payment to each class member, but the disparity between what the unnamed class members and the named plaintiffs were set to receive. This gap has now been narrowed.

Under the original settlement agreement, the named plaintiffs' debts to Midland would have been forgiven. Now, nobody's debts are being forgiven through the settlement.[1] Thus, the named plaintiffs no longer receive the benefit of having hundreds or thousands of dollars of individual debt forgiven. *See Vassalle I*, 708 F.3d at 755.

The settlement also preserves the ability of all class members to use the falsity of the attestations of personal knowledge in the affidavits against Midland in their individual debt-collection actions. A class member who has had a judgment entered against her may seek to vacate that judgment and recover any amount she has already paid. A class member who is still litigating a debt-collection action against Midland may raise any available defenses to the action, and may challenge the admissibility of the affidavit. Of course, there is no guarantee that any of these vacatur actions or defenses will be successful. But unlike the previous settlement, it is no longer "virtually assur[ed] that Midland will be able to collect on these debts." *Vassalle I*, 708 F.3d at 755. The class members retain the ability to fight against Midland in their individual debt-collection actions.

The claims covered by the release in the revised settlement are also more narrowly defined. Class members are prohibited from asserting independent claims based only on Midland's affiants falsely attesting to having personal knowledge of individual accounts. Claims

---

[1] Midland previously dismissed its debt-collection action against named plaintiff Andrea Brent, but this dismissal was not part of the consideration for the settlement. Instead, the dismissal was necessary to create federal jurisdiction over Brent's FDCPA claim, which originally had been asserted as a counterclaim to Midland's debt-collection action in state court prior to removal of the case to federal court. This scenario left the district court without jurisdiction over her FDCPA class action. *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831–32 (2002) (removal jurisdiction cannot be premised on a federal counterclaim). Once this flaw was discovered, Brent's case was remanded to state court and voluntarily dismissed. Brent was then permitted to re-file her FDCPA claim against Midland, thereby creating a basis for federal jurisdiction. *See* 28 U.S.C. § 1331. If anything, this series of events shows how the claims at issue here, which relate only to the use of affidavits that falsely attest to personal knowledge, are distinct from the underlying debt-collection actions.

alleging other illegal, abusive, unfair, or deceptive practices by Midland with respect to the affidavits are not released, and class members remain free to sue Midland for those practices. Consumers could collectively litigate such claims. Thus, while the release eliminates some avenues class members could use to seek relief, it leaves many others open. And the class members receive compensation for the one avenue that is now closed.

The decrease in the award to the named plaintiffs further remedies our previous concerns about giving preferential treatment to the named plaintiffs. Under the previous settlement, the four named plaintiffs had been set to receive $2,000 each, for a total of $8,000. *Vassalle I*, 708 F.3d at 756. While the named plaintiffs' revised award of $1,000 is still obviously quite a bit more than the $18.75 each of the unnamed class members who filed claims will receive, it does not seem so disproportionate that it would significantly distort their incentives, and the absolute dollar value is reasonable given their efforts to advance this litigation over the past few years. *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 723–24 (6th Cir. 2013) (Cole, J., dissenting). In fact, the FDCPA envisions just this sort of arrangement: Congress caps recoverable damages in a successful FDCPA class action at the lesser of $500,000 or one percent of the defendant's net worth, with an additional amount of up to $1,000 for each named plaintiff. 15 U.S.C. § 1692k(a)(2)(B). The four named plaintiffs here will receive the statutory maximum for a successful action and the unnamed class members split almost five times the statutory maximum for a successful action. Granted, the settlement also covers any analogous state law claims that class members could have brought, hence the increased class payout. But this statutory arrangement strongly suggests that this sort of incentive award is permissible, and not excessive relative to the damages available to the rest of the class. Furthermore, this level of an award to the named plaintiffs is not uncommon in FDCPA settlements. *E.g.*, *Carroll v. United*

*Compucred Collections, Inc.*, 399 F.3d 620, 623, 625 (6th Cir. 2005) (two named plaintiffs received $1,100 each, while class with 164 members split $10,000, receiving about $60 each).

### 2. Injunction

As part of the settlement, Midland has also agreed to a "stipulated injunction." Under its terms, Midland must change its procedures for generating and using affidavits in debt-collection actions to prevent false attestations of personal knowledge. The Special Master overseeing the injunction has approved Midland's revised processes and forms. Midland will be required to use affidavit procedures and language consistent with the Special Master's orders for five years. Either side may seek modification of these orders "based on an unfair burden on the business or a change in the law." (Revised Class Action Settlement Agreement, Vassalle R. 227-1, PageID 4054.)

The objectors argue that the district court erred by failing to identify a jurisdictional basis for approving this provision. Specifically, they say that neither the FDCPA nor Ohio law allows for the issuance of a nationwide injunction. But this overlooks the contractual nature of a settlement agreement. *See G.G. Marck & Assocs.*, 309 F. App'x 928, 934 (6th Cir. 2009); *Williams*, 720 F.2d at 920; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (describing a suit for enforcement of a settlement agreement as "a claim for breach of contract, part of the consideration for which was dismissal of an earlier federal suit"). The parties may agree to undertake actions to resolve a dispute that the law would not necessarily require them to. *See Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 522–23 (1986) ("[I]t is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations . . . .").

The objectors also argue that the district court erred by not entering a finding that Midland actually violated the law. This mistakes the requirements for an issuance of a permanent injunction under Federal Rule of Civil Procedure 65 with the voluntary nature of the injunctive relief here. A plaintiff seeking a permanent injunction must prove that he has suffered an irreparable injury, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), and a district court cannot issue such an injunction without providing its reasons, *see* Fed. R. Civ. P. 65(d)(1)(A). But with this settlement, the district court has merely approved Midland's agreement to voluntary change its practices. The legal authority binding the parties is the settlement—*i.e.*, a contract—not Rule 65. "Indeed, it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all." *Int'l Ass'n of Firefighters*, 478 U.S. at 522.

In our prior opinion, we held that the one-year injunction was "of little value." *Vassalle I*, 708 F.3d at 756. This was because it required only that Midland change its policies (rather than actually prohibiting Midland from creating false affidavits), did not prevent Midland from reverting to its old practices after the end of the year, and "offer[ed] only prospective relief that likely does not benefit class members at all." *Id.* While this purely prospective relief continues to offer "little value" to current class members, changed circumstances suggest that the injunction actually will help prevent similar issues in the future. In addition to this stipulated injunction, Midland has entered into a consent decree with the Consumer Financial Protection Bureau ("CFPB"), *see* Consent Order, *Encore Capital Group, Inc., et al.*, Admin. Proceeding No. 2015-CFPB-0022 (CFPB Sept. 9, 2015), and settlements with several states' attorneys general, (*see* Def. Appellee's Br. at 58–59), that now will effectively require it to keep these reforms in place beyond the five-year horizon. These governmental entities, in combination with

ongoing oversight by the Special Master, will ensure Midland's compliance. This suggests that the injunction will actually work in concert with these other restrictions to serve the public going forward. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 350 (6th Cir. 2009).

The state attorneys general, in their amicus brief filed in the district court, asserted that the court's approval of the revised affidavits through its entry of the injunction may actually harm class members by giving court approval to affidavits that do not actually comply with state law. (*See* Amicus Br. of Att'ys Gen., Vassalle R. 249-1, PageID 4414–47.) The objectors argue that the district court committed procedural error by not specifically discussing the objections of the attorneys general when approving the revised settlement. Although the district court made no specific findings as to these exact issues, it incorporated by reference its prior opinion evaluating the merits of the claims, the class's potential recovery, and litigation risks, *see Midland Funding, LLC v. Brent*, No. 3:08-cv-1434, 2011 WL 3557020, at *15–18 (N.D. Ohio Aug. 12, 2011), and provided a written opinion regarding the fairness of the revised settlement in light of those findings. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, ___ F.3d ___, 2016 WL 3163073, at *7 (6th Cir. 2016). It was not required to respond to every particular objection as long as it afforded adequate process to determine that the settlement is fair, reasonable, and adequate. *See Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001). Furthermore, the district court explicitly stated at the fairness hearing that it had reviewed all the briefing, and therefore must have implicitly rejected the arguments of the attorneys general by approving the settlement.

But even if the district court erred by not considering the objections of the attorneys general, it was harmless. The attorneys general argue that the injunction may harm individuals because the approved affidavits do not necessarily comply with state law. But if that is the case,

individual defendants in debt-collection actions will be able to challenge the admissibility of those affidavits. Midland may then ask the Special Master for permission to modify the affidavits to resolve the issue. The settlement does not prevent class members from raising such a defense to a debt-collection action, nor does it obligate any court to accept a faulty affidavit.

\* \* \*

Taken together, the terms of the revised settlement suggest that the allocation of benefits is fair to the class. *See Dry Max*, 724 F.3d at 717–18. The named plaintiffs no longer receive preferential treatment while the unnamed class members receive only perfunctory relief. It was not an abuse of discretion to approve the settlement.

**B. Class Certification**

To certify a class action, a district court must find that the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and fits into one of the three categories in Rule 23(b). Under Rule 23(a), a class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Because certification in this case is brought under Rule 23(b)(3), the class must also satisfy the requirements of superiority and predominance. *Id.* at 362–63. We review the district court's class certification for an abuse of discretion. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012).

We found the Rule 23(a) requirements of numerosity, commonality, typicality, and the Rule 23(b)(3) predominance requirement satisfied in *Vasalle I*. 708 F.3d at 756. Those requirements of class certification are not challenged here, and we once again find them satisfied. We will address, however, the adequacy and superiority requirements. The changes in the terms

of the revised settlement allowed the district court to exercise its discretion to find these requirements satisfied and therefore certify the class.

*1. Adequacy*

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). We analyze that requirement using a two-prong test: "'1) [T]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Put another way, we "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (citation omitted).

In *Vassalle I*, we found that the named plaintiffs shared common interests with the unnamed class members, because "all shared a desire to obtain both monetary and injunctive relief from Midland." *Vassalle I*, 708 F.3d at 757. We also found it "undisputed that class counsel here is 'qualified, experienced, and generally able to conduct the litigation.'" *Id.* Those findings still hold true today.

What made the class representatives inadequate the first time around was that the relief offered through the settlement created conflicting incentives for the named plaintiffs and unnamed class members. *Id.* Namely, the named plaintiffs' debts to Midland would have been forgiven while the unnamed class members would have been effectively prevented from fighting Midland's debt-collection actions. The named plaintiffs accordingly had a strong interest in

having the settlement approved and their debts forgiven, whereas the unnamed class members had an interest in scuttling the settlement so they could contest their alleged debts. *Id.*

The revised settlement has cured this defect. Now, no debts are forgiven through the settlement. The named plaintiffs and unnamed class members have the same interest in preserving their ability to use the falsity of the attestations of personal knowledge in the affidavits against Midland in their individual debt-collection actions. The settlement preserves their ability to do just that.

The objectors argue that the revised settlement's limitations on seeking vacatur of judgments will functionally prevent unnamed class members from achieving any relief. Class members may seek to vacate judgments, but may not do so on a collective basis and may not seek any relief other than vacatur and the return of any money paid. According to the objectors, the fact that the named plaintiffs have counsel who are being paid for their work in *this* action means those named plaintiffs still have conflicting interests with the unnamed class members.

The objectors' view mistakenly conflates this FDCPA action with individual debt-collection actions. The release impacts all class members the same. Two of the named plaintiffs, Vassalle and Johnson, have judgments against them that they can now seek to vacate. They will have to do so individually, just as the unnamed class members will, and will be subject to the same rules in doing so as the rest of the class. They will have the ability to retain counsel, but just because they are represented in this FDCPA action does not necessarily mean they will be represented in a vacatur action, let alone by this same counsel. Thus, the release does not create antagonistic interests.

The objectors and the parties also disagree about the value of these limitations on the exception to the release. Namely, they dispute whether the limitations are actually limitations at

all, since the parties raise doubts about whether individuals may ever litigate vacatur actions collectively or recover attorneys' fees merely for successfully vacating a judgment. The parties also note that many class members may now be time-barred from seeking to vacate judgments. At the very least, the answer to these issues is somewhat uncertain. Regardless of their resolution, though, the most important aspect of the adequacy factor of Rule 23 is that all the class members' interests are aligned. Both the named plaintiffs and the unnamed class members are subject to the same provisions in the settlement agreement. The named plaintiffs do not receive a windfall that would lead us to question their interests or incentives in agreeing to these terms. *See Dry Max*, 724 F.3d at 721–22.

Under the settlement agreement's "quick-pay" provision, class counsel have already received their $1.5 million fee from the settlement fund, but must repay that amount if the settlement agreement is rejected. The objectors say this creates improper incentives for class counsel by effectively making them preferred claimants against the settlement fund. "In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings v. Prudential-Bach Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

We conclude that the district court did not abuse its discretion in finding the quick-pay provision here to be reasonable. Quick-pay provisions are common. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1643 (2009) (finding that over one-third of federal class action settlement agreements in 2006 included quick-pay provisions). All that has changed from the prior settlement is the timing of the payment to class counsel. The quick-pay provision does not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid.

The $1.5 million in attorneys' fees has not changed since the last settlement despite having provided an additional three years of work; this refutes the inference that the quick-pay provision is some sort of money-grab by class counsel to the detriment of the class. *Cf. Gascho v. Global Fitness Holdings, LLC*, ___ F.3d ___, 2016 WL 2802473, at \*23 (6th Cir. 2016) (Clay, J., dissenting) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)) (describing warning signs of class counsel pursuing own self-interest). In any event, the amount of attorneys' fees was ultimately determined by the district court in the exercise of its discretion, and class counsel would have been required to return any difference had the district court awarded less than the full amount requested.

Finally, the objectors argue that the named plaintiffs are inadequate because they have access to summary judgment briefing in the *Brent* litigation that is now under seal and therefore unavailable to the unnamed class members. The objectors do not argue that the seal creates an antagonistic interest by giving the named plaintiffs access to non-public information that would provide them additional insight into the merits of the proposed settlement. *Cf. Shane Grp.*, ___ F.3d ___, 2016 WL 3163073, at \*6. Instead, the objectors essentially argue that with this briefing the named plaintiffs will have an easier time defending against Midland's debt-collection actions than the unnamed class members. However, Midland has already offered to unseal those filings once the settlement becomes effective, thus obviating this objection. Furthermore, the settlement does not prevent class members from engaging in whatever discovery is permitted in their individual debt-collection actions or citing to judicial decisions from this litigation to support their positions when seeking to vacate judgments.

*2. Superiority*

"In addition to meeting the requirements of Rule 23(a), a class must satisfy one of the categories of Rule 23(b)." *Young*, 693 F.3d at 544. Certifying a Rule 23(b)(3) type of class requires the district court to find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Four factors the district court may consider in making this determination include: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the existence of pending litigation concerning the same controversy; (3) the desirability of concentrating the litigation of the claims in this forum; (4) the difficulties likely to be encountered in the management of the class action. *Id.*

In *Vassalle I*, we determined that most class members had limited resources, this case is "far more procedurally advanced" than competing actions, and all class members share a threshold issue as to whether Midland was liable under the FDCPA. *Vassalle I*, 708 F.3d at 758. These considerations all pointed in favor of finding superiority to be satisfied. Once again, we see no reason to disturb those findings today.

We nevertheless concluded that the superiority requirement was not satisfied under the prior settlement for two reasons: *first*, the unnamed class members' interest in individually controlling the defense of Midland's state court judgments against them was compromised by the release, and *second*, the potential damages the class members could have recovered in claims under state law would have exceeded the value of the monetary relief. *Id.* The narrowing of the release in the revised settlement addresses both concerns.

Our previous opinion noted that "[t]he interest of the unnamed class members in individually controlling the defense of Midland's state court judgments against them is their

strongest interest." *Vassalle I*, 708 F.3d at 758. The original release, which would have prohibited unnamed class members from using the false affidavits to challenge Midland's debt-collection actions, "left [class members] without a crucial defense against these judgments." *Id.* That precise interest is now preserved under the revised settlement, as class members may use the falsity of the affidavits in seeking to vacate judgments or defending against ongoing debt-collection actions.

The revised settlement—and the litigation leading to it—also ameliorate some of our previous concerns regarding the damages that could have been available to class members in state law claims. The original settlement contained a broad release of all claims "arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits." (Class Settlement Agreement, Brent R. 107-1, PageID1794.) Looking at this release, we held that the damages available under available state law claims "would exceed the value of monetary relief in this settlement." *Vassalle I*, 708 F.3d at 758. We based this on the likelihood that many class members would choose to bring individual lawsuits, and noted the existence of parallel class actions. *Id.*

The revised settlement releases only claims "arising out of or relating to the use of affidavits in debt-collection lawsuits brought by Defendants, *where the affidavit used was executed by a person who lacked personal knowledge of the facts stated in the affidavit*." (Revised Class Action Settlement Agreement, Vassalle R. 227-1, PageID 4056 (emphasis added).) Lest there be any ambiguity as to what the revised release means, the agreement specifies that "this release applies to any action [under the FDCPA, state consumer-protection laws, and state or federal common law] in which a Class Member seeks any relief on the ground that an affidavit used in a debt-collection lawsuit brought by Defendants was executed by a

person who lacked personal knowledge of the facts stated in the affidavit." (*Id.*) The class members remain free, however, to assert any other claims based on the affidavits against Midland—for example, if the information in the affidavits about the consumers' accounts is actually wrong, or if the affidavits have been used in any other improper way. That a smaller set of potential claims is being released makes the compensation more reasonable.

Since *Vassalle I*, the parties have also submitted substantial briefing in the district court regarding exactly what state law claims might be available to plaintiffs complaining about Midland employees improperly attesting to personal knowledge in affidavits. (*See* Summary of State Debt Collection Statutes, Vassalle R. 216-5, PageID 3471–82.) This briefing—which was not available to us when we rendered our last opinion—shows that not all states would allow consumers to sue based on these allegations, and those that do are unlikely to offer considerably greater relief than what is available under the FDCPA. There are still questions about the true value of the potential state law claims that are being released. But with this new information, we do not find ourselves bound by our prior finding that the damages available under available state law claims "would exceed the value of monetary relief in this settlement." *Vassalle I*, 708 F.3d at 758.

A class action is superior "if individual suits would yield small recoveries." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007) (finding potential damages of about $125 per plaintiff may not be enough to encourage individuals to bring suit). We have never set a minimum threshold on per-class member recovery that a settlement must offer in order for a court to approve it. It was within the discretion of the district court to find the potential recovery for successful state law claims small enough to be outweighed by the other factors.

Every other factor points in favor of finding this class action is superior to individual litigations, and "where a threshold issue is common to all class members, class litigation is greatly preferred." *Young*, 693 F.3d at 545. Most crucially, class members now retain their ability to use the affidavits in defending their individual debt-collection actions. If the class members want to opt out of the class and pursue their state law claims for potentially greater relief, they have the opportunity to do so.

**C. Class Notice**

The objectors also argue that the class notice is defective. Their arguments on this issue follow from their arguments as to why the settlement should not have been approved and the class not certified. Because we find those objections to be without merit, their objections to the class notice will also fail.

Due process requires the class notice to be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). This does not require "notice to set forth every ground on which class members might object to the settlement." *Id.* at 630. This just means that the notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)). We review de novo a finding that class notice satisfies due process. *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008).

The class notice specifically advises class members that anyone who does not opt out will not be able to litigate vacatur actions collectively. (Class Notice, Vassalle R. 258-1, PageID

4730.) The class notice accurately states that the settlement will prevent class members from filing suit against Midland based on a false attestation of personal knowledge in an affidavit, but that otherwise the settlement does not affect any defenses class members might have in debt-collection actions. (*Id.* at PageID 4729.) The notice also advises class members as to where and how they can obtain more information—phone numbers, a website, and class counsel's mailing address. (*Id.* at 4732.)

However, the class notice does not describe how the release prohibits class members seeking vacatur from "seek[ing] any [other] relief" except for "return of any money paid on the judgment." (Revised Class Action Settlement Agreement, Vassalle R. 227-1, PageID 4057.) "We acknowledge that the omission of this fact might influence a person's decision about whether to opt out of the class," but nevertheless conclude that "the notice was not so misleading that it failed to apprise potential class members of their rights and deprived them of 'minimal due process protection.'" *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 423–24 (6th Cir. 2012).

In the notice, class counsel provide an opinion that they believe this settlement is fair. (Class Notice, Vassalle R. 258-1, PageID 4731.) To reach this conclusion, the opinion describes the damages available in a successful FDCPA action, states that class counsel believe "it is unlikely that most potential plaintiffs would be able to recover substantial additional amounts under state laws" and references the new procedures implemented under the stipulated injunction. (*Id.*) Class counsel also advise class members of their ability to "consult an attorney in your state for advice on your state's consumer protection laws." (*Id.*) In light of our foregoing analysis regarding the diminished value of claims released in this revised settlement, and the changed circumstances surrounding the injunction, these are reasonable opinions. Class

members are provided advice from qualified counsel, but are encouraged to consult their own lawyers to obtain a second opinion as to whether that advice is sound. That meets the minimum due process threshold.

The objectors also argue that the class notice should advise the class members that they do not have access to the summary judgment briefing from the *Brent* litigation, which is currently under seal. The settlement agreement is not the cause of the seal order in that case, and as previously discussed, class members still have ways of proving their cases in debt-collection actions. The objectors do not argue that these documents were improperly sealed, or that the seal deprives class members of information they would need to make informed decisions about whether to object to the revised settlement or file claims. *Cf. Shane Grp.*, ___ F.3d ___, 2016 WL 3163073, at *4–6. We do not see why the settlement order violates due process by not commenting on the sealed *Brent* documents.

### III. CONCLUSION

Settlements are compromises. The compromise reached in this revised settlement is within the bounds of reasonableness. It preserves the ability of class members to challenge Midland's use of affidavits in debt-collection actions that falsely claim personal knowledge of individual accounts. It provides relief to the class on the limited claims asserted under the FDCPA and similar state laws. The interests of the named plaintiffs and the unnamed class members are aligned. The district court did not abuse its discretion in approving the settlement, certifying the class, or approving the class notice. We affirm.